This afternoon is People v. Michael Sparks. Judge, you ready to proceed? Good afternoon, gentlemen. I'm here this afternoon representing an individual by the name of Michael Sparks. Mr. Sparks currently resides in Menard Penitentiary, where he's lived for the last six years. He was convicted of first-degree murder of shooting his wife in the midst of a bitter divorce, and he's serving a 35-year prison term in Menard Penitentiary. We are here today to ask relief from this Court because of the early dispatch at the second stage of a post-conviction proceeding initiated on behalf of Mr. Sparks after the Supreme Court denied leave to appeal this Court's affirmance of the conviction. That petition was argued, a motion to dismiss that petition was argued in April of 2007, and in May of 2008-2009, the Court dismissed all of the claims in their entirety and did so improperly per concession of the State with regard to one of the claims, and I would submit to you did so improperly with regard to all of the claims, with the exception perhaps of a waiver issue that rests but was not relied upon by the Court with regard to the ineffective assistance of counsel in not certifying the insanity defense to allow an expert to give testimony as to Mr. Sparks' intent at the time he committed the acts that caused his wife's death. The first thing that I should say is I am here not asking for this Court to grant a new trial to this man. I'm asking this Court to give him what he should receive, and that is the right to present evidence on some claims that state some fairly substantial constitutional questions with regard to the process to verdict in this case. First of all, I do have to apologize to the Court. I'd like to blame my secretary, and I think it is her fault because she does all the final checks before we file briefs, but we repeatedly cite to a third district opinion in the briefs, and it is referred to as People v. Spencer. That case is People v. Harris. Actually, it's People v. Spencer-Harris. It was decided by the third district appellate court shortly after we argued the motion to dismiss, or actually several months after we argued the motion to dismiss. A decision on that motion was still pending, and in early May, I filed a motion for leave to amend the petition, and also a motion to cite additional authority and to cite People v. Harris in conjunction with the amendments because the People v. Harris is a very significant case in terms of its interpretation of the Supreme Court's case in People v. Allen, and it actually is the first, and I think it's the only case that has said that it can be plain error, even if counsel does not object and ask for a bruised hearing to restrict the use of restraints, electronically trial shackles, so to speak, that even if that is not challenged by defense counsel, it can amount to plain error if it is a circumstance that compromises the dignity of trial. And in that case, Mr. Harris was given a new trial by the third district's hearing. Putting a stunt belt on this man during the course of trial and how it affected him and the evidence with regard to that entitles him to a new trial because the dignity of that trial was compromised. Well, shortly after I filed a motion for leave to amend the petition, I received, after 13 months of waiting, a order that dismissed the petition in its entirety and a motion that flatly denied the ability to amend the petition but granted the motion to consider People v. Harris, which could only have been considered if the motion for leave to amend had been granted. And it did come as a bit of a surprise because the common practice in motions practice in civil courts in Madison County is you get a notice of a hearing when you request leave to file an amended pleading. And then, of course, what you do is you prepare the amended pleading, you send it to opposing counsel, they have an opportunity to object or maybe the two of you agree. It wasn't attached to your motion to amend? No, it was not. And, of course, usually, ordinarily, you get about a 30-day lead time on a notice of a hearing on leave to amend and then a lot of times the amendment is agreed to between the parties. But in this case, the trial court flatly denied it and did so by claiming in his order or with the reasoning that it's not necessary. When you say that's local motion practice, is that incorporated in any local rule of the Third Circuit or anything like that? Or is it just a decided tradition? Judge Rarick, by the way, is of record in this case in the lower court, and I ask him that direct question whether or not these are set in rules, and he says it's just common civil practice. It's sort of the way things work. In any event, we should have been permitted leave to amend, and it has become even more important in terms of that particular due process issue in light of a document that the state brought to light and to our attention in its brief, and that is a document that exists on page 498 of the common law record in this case. I know only one of you have the record, the author and judge, but that particular document at 498 should be looked at by all. First off, it does not support the claim by the state that this issue was waived because it wasn't raised on direct appeal. That document couldn't notice an appellate counsel any arguable issue with regard to the use or deployment of electronic trial shackles. What it is is an unfiled document, unverified. It bears no file statement. There is nothing in the report of proceedings referring to it or what it's doing there. It does not establish in any way that trial counsel or the court was aware of the fact that Michael Sparks was made to wear this belt. It is just there, and the mystery of how it is there cries out for a hearing with regard to the due process issue of the deployment of this device, and that is for this reason. It's content. If we are permitted to go outside the record, which we have to do as post-trial, we couldn't do on direct appeal, but outside the record, I suspect that we're going to be able to prove between a witness from the Sheriff's Department and Mr. Sparks and counsel and the trial court, who, by the way, if this is remanded, and it is going to be remanded, is a witness. And this court under 366 should prize the chief judge to assign someone new because Judge Romani is going to be a significant witness of this. Because I don't believe he was even aware of the fact that this was done in his courtroom. If he was, certainly his order would have gone beyond saying, I saw that he could move freely during breaks. I observed that he was able to consult with counsel. He would have said, I knew about this bill, and it didn't interfere with him at all. In any event, if we are able to have a hearing on this and establish that this document... I take it if there is a remand, and of course there is a confession of error on one of the points of the brief, you're going to ask Judge Romani to recuse himself. I would do that if this court has the power to, in an order, see that this is a problem in terms of testimony. He actually is going to give testimony about his observations of the defendant. And in addition to that, he needs to be asked whether he knew or was aware in any way of this device being deployed, especially under People v. Harris, because it's a significant factor in the Harris case that the court talks about at length, that this is the inherent power of the courts to decide whether restraints are used in their court. This is not something the Sheriff does. But I would submit in the Allen case and in the Harris case, or in any of these Stun Belt cases, there has never been a piece of evidence like 480 or 498. The document 498 I would submit is going to prove to be a form that was used by the Madison County Sheriff's Department, and it was read to the defendant and to all defendants who had to wear this device on the unilateral decision of the Madison County Sheriff. And the first thing on the document is that if you make any quick, sudden movement, or any movement we perceive as hostile, you will receive 50,000 volts of electricity discharged through your body. I submit there is no document like that in any of these other Stun Belt cases. What does that mean? What did it mean to Michael Sparks, who, an expert psychiatrist from the state, as well as the most renowned expert in the United States, both agree, suffers profoundly from post-traumatic stress disorder. And he does that by virtue of the fact that he spent every day of his life for over a year in combat in Vietnam as a crew chief in the belly of a warplane, being shot at and shooting at people. And he came back sick, mentally sick. And you tell that man that suffers from this kind of a disease, on the day of his trial, that document is dated May 22nd, or October 22nd, 2002. On the very day of his trial, you start shackling him in a device that has the ability to course 50,000 volts of electricity through his body, and you take him and you take him over to court. And you tell him, listen, if you don't wear this, we'd try you without taking you to court. And you sit him down at counsel with that device on, and you don't tell him, by the way, 50,000 volts of electricity isn't going to kill you. You don't tell him anything, what it means. Now, we wouldn't condone for a moment if a handler of an accused brought the accused over to a courtroom and said, by the way, I'm going to be sitting up in the balcony with my .357 trained in your head, and if you make a sudden movement or a quick movement throughout the course of your trial, I'm going to shoot you. Take a look at the document, at 498 Newsletter. Wonder how it got there. And ask yourself whether we've made a substantial enough showing to get a hearing on the issue. Circling back to the issue of amendment, I would note that the Post-Conviction Act says that amendments should be allowed as generally provided in the Civil Procedure Code. And in this regard, it would seem to me that since this case is going to be remanded for a hearing, and we are going to get a hearing, if we're following the Civil Code, we should be able to present any evidence on any particular constitutional violation, and if we actually establish such a violation, be entitled to amend our petition to conform to the proofs. I mean, this court, in the case just recently, in Ford v. Jablonski, held it precisely that a civil plaintiff can send a case to a jury on theories of one planet if he had evidence to establish it and that he could amend his complaint after a verdict was made. And that's what the rules say. I would submit that if a person establishes a constitutional violation that wasn't planned, he ought to be able to conform his pleadings to the proof just as well as a plaintiff who is seeking no more than civil damages rather than freedom. Some of the other issues and the content of the other issues I submit, Well, we're not here to argue that we've established a valid constitutional claim in any of the allegations or the affidavits and the petitions. We do not have to prove a valid constitutional claim. We do not have to prove the absence of prejudice under the prejudice prong of Strickland at this point in order to have a hearing at which to do so. If this court looks at our pleadings in the petition and the affidavits that we attach that support it and take it as true, which under Supreme Court law, people versus title says it must be, then the issue is simple. If you take it as true, there are substantial questions of constitutional violations in the process to verdict that need to call for a hearing. We might not prove it, but we shouldn't be dispatched this early and this cavalier with the things that we've alleged in this petition. We have an affidavit from an individual in this petition. He swore under oath, and if it's taken as true, that the jailhouse confessor, witness, told him when they were in the cell together, Sparks didn't really confess to me, and I told the prosecutor and the detective that. That's in his affidavit. Now that alone should be a showing that warrants a hearing on whether the prosecutor was willing to put forth a tainted perjury testimony. But in the content of that testimony also is a set of questioning in which the prosecutor makes it appear to the jury that there's a 20-year recommendation under his deal, a 20-year recommendation on second-degree murder. Tomler was sentenced to 10 years. And as I said before, we don't have to prove this claim right now. I mean, we haven't gone to the cost of getting the transcripts of the sentencing hearing or the plea hearing on Tomler. We don't know whether or not the state got up and said, we've agreed to recommend 10 years, Your Honor. But I would submit to Tomler's record that if the prosecutor got up and recommended 20 years, he got 20 years. And if he did that, if we can prove that, then a judge could reasonably infer that the prosecutor allowed to stand and should have known that he was misstating, falsely projecting the interest in testifying of this man to the jury. That he was allowing the jury to think he was going to get 20 years when, in fact, that wasn't the deal at all. The state argues that it was race judicata because on direct appeal, defense counsel came up here and appealed and said why it was prosecutorial misconduct to make a deal with the likes of Manuel Tomler. With a man that has committed 16 felonies in a 23-year span, they make a deal in which he basically is going to get out of prison in a few years when, in fact, for first-degree murder, he would go to prison for life at this record. But, of course, this Court quickly recognized this is done all the time. I mean, prosecutors bar freedom from testimony all the time. It's not necessarily reliable testimony. I don't think it's very reliable, but jurors do believe it. Just like a judge might believe the testimony of Jeremy Brown, that Manuel Tomler lied about the fact that Michael Sparks confessed to him and that he told the prosecutor he was lying about it but testified anyway and the prosecutor was willing to give that testimony anyway. Certainly, it was not race judicata, what happened up here. And in that regard, I think it's important for me to note that race judicata, when this Court decides an issue, you obviously cannot try to re-litigate it in a post-conviction petition because it's jurisdictional. You've decided, the higher court has decided, and the lower court has to follow it. The claim goes out the window. But that's not the case with waiver. Waiver is a rule of administrative convenience, and it's done, and it actually developed in a course of time that is so different than today. In a period of time when my first year as an assistant state's attorney, I tried 27 jury cases to verdict in St. Clair County. Their 29 assistants tried 14 cases in all of last year. It was a matter of administrative convenience. It was a rule that said the courts can't be inundated with all this stuff. If it could have been raised on direct appeal, it should go away. You don't get to hear it. But in this case, think about it. The state's saying, we've got to go back for a hearing. If the court thinks that there was a waiver of some issue in this case, think about what the state is really saying. Let's go back for a two-hour hearing but not a three-hour hearing. Let's invoke administrative convenience and say that this is waived even though it's a decent constitutional claim because it's going to take a couple hours of the Madison County Court's time to hear the other claims. I would submit that's a little harsh and a little unnecessary. And, given some of the issues that are raised in the petition, one more. The ineffective assistance of counsel claims issues have three components. The first is the defense counsel. By the way, the defense counsel and I are friends. The criminal defense counsel. We both tried this case. And he didn't go out and interview people that were in the jail with Manuel Tolman. Whether he had time to or not, I don't know. But on the face of this record, there were witnesses who had knowledge from Tolman that Tolman was going to lie and say that the defendant confessed to him and knew that knowledge before the trial. But none of those witnesses were interviewed. The allegations of the petition are that the defense counsel was apprised of these various witnesses that should be interviewed and that he failed to do so. These witnesses potentially could have severely impeached Manuel Tolman. And in that regard, there is potential for prejudice and they should get a hearing. The second component, of course, is if counsel, and I don't think counsel knew, but if counsel did know about the electronic device, he should have done something about it because Mr. Sparks did not present a danger to the safety of anyone in the courtroom. Thank you. May I please report? Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. The defendant and I do agree on one thing, and that is that he is entitled to an evidentiary hearing. However, we strongly disagree on what will be considered at that evidentiary hearing. The hearing on remand should deal with one issue and one issue only, and that is whether there was evidence of third-party jury influence. There should be no amended petition, and there should be no discussion of the other issues of the post-conviction petition, which the trial court has already ruled on. As set forth in the state's brief and as I will establish today, all of those issues that were raised were properly dismissed or denied by the trial court and should be affirmed. Quite a bit of time in briefing and in oral argument thus far has been on whether there was error in allowing the amended petition. I would note that the amendment to the petition was filed a year after the hearing in this case. I would also strongly disagree with counsel's argument that the trial counsel didn't see the amended petition. He did. He said that the subject matter in the amended petition was fully covered in the petition already before the court and had been fully argued before the court in the motion to dismiss. But is there an amended petition in the record? No, but that's not my fault. That's the defendant's fault. I understand, but isn't it also just as logical that perhaps the judge was referring to the allegations in the motion for leave to amend, which as you point out only mentions the stun belt, actually stun gun? I believe that when this court reads the transcript, that you will have no doubt that the trial court did see the amended petition. I don't see how he could have ruled otherwise. And, as my second point is, the only thing he wants to do is make Bo's argument a little bit stronger. That's all he wants to do. And what's the problem with amending it then? Why are we fighting this little battle? You're looking at it from the wrong side. What's the problem with not doing it? And if ever there is a place where discretion is given to trial courts, it is in. I'm aware of the standard review, but it's a civil proceeding, correct? Correct, yes. And the opposing counsel pointed out you can amend pleadings well after the judgment's been entered even, or the jury verdict's been entered even yet, to conform to the proofs. The case that I've cited to you, Nicholson in particular, is a civil case. And it very clearly says... I can understand if this has been pending for a long time. Presumably Judge Brumani had been working on it and on his decision, and then maybe at the last minute this amendment came in, just coincidentally, and he was already three-fourths way done with his order on it. And he looked at it and he said, this is not going to make a whit of difference in my analysis of the case. Therefore, I'm not going to go ahead and give leave to amend it now or let people answer and discontinue it for another month or so. It's been pending for so long, I'm just going to go ahead and gruel on it because it's not going to make any difference. Isn't that probably what he did? Very possibly. How would that be an abuse of discretion? It may not. But if it's going to be remanded back, why not allow him leave? If it's not going to affect the analysis any, why not let the record be clear on it then? Because the Bowes analysis should have nothing to do with the remand. As I stated to begin with, this appeal should go back for an evidentiary hearing on only the one issue which the state conceded, which is the third-party contact with the jury. It shouldn't go back for any other reason. I think that's the most important thing that we need to discuss here today because I'm not sure that that's ever really come up before. It is very clear that at the first stage you can't partially affirm and partially remand. It's very clear that the trial court can't strike, say, I'm dismissing this and this and this and not. That's very clear. The Supreme Court in America says that you can't do that at a first-stage petition. We're not at a first-stage petition here. We are at a second-stage petition. And I think, like I said, I think the whole important issue to decide here today is can you dismiss some but not all of a second-stage petition? Because if you can, then the trial court properly dismissed all of the other elements of this and the only thing remaining, the only thing that needs to go back, is the question of the third-party juror contact. Now, I believe that there's... Except for the twist in this case of there being the pending motion to amend. Why couldn't we say we're sending this back and there must be a third-stage hearing on the juror contact issue? And we're also ordering you to allow leave to amend and have a new second-stage hearing on the amended petition on the other issues. Because we don't know what the amendments would have shown because he wasn't allowed leave to amend. Well, first of all... See what I'm saying? I mean, it doesn't have to be all third-stage or all second-stage. I mean, you're agreeing he's entitled to a third-stage on the one issue. On one issue, yes. Again, I don't think that the defendant presented any reason to file a supplemental. There are... The Nichols Court says that very clearly, in a civil context, that the time limitation is part of the phrase just and reasonable. It says, Surely the phrase just and reasonable must necessarily include the imposition of a time limitation within which the amendment must be filed. That is, civil case, dealing with a civil order, filing an amendment two years after your original petition was filed and a year after the hearing has been filed when it is not just and reasonable. Moreover, the defendant has said all he wanted to do was beef up his Bowes argument. He didn't add a new argument to it. It wasn't like there wasn't a Bowes argument in there before. It's always been in there. He's just found a new... He did. He accomplished what he wanted to do in amending his petition by filing a motion to cite the new case. Even that, one would assume that in deciding this case, one would presume, of course, that a trial court in deciding any of these issues looks at the new law and looks at the law. We know what the law is on Bowes, and we presume that the trial court knew everything he needed to know to decide this issue. And that's basically what he said. There's nothing new in this amended petition. So why are we going to string this out even longer than it already is when the defendant does not have a Bowes argument? That's the most you could possibly say, is that if you're going to say an amendment should have been allowed, how would that have affected Bowes' argument? And it does not. Defense counsel makes a big deal about this amazing document that I found in the record. I found it. Original appellate counsel could have found it. It's not hidden. It was filed in the record. There's nothing amazing about it. Obviously, defense counsel doesn't like the concept of forfeiture, which he has chosen to phrase as waiver, but our Supreme Court has said this is forfeiture. He doesn't like the concept. But that's how we decide post-conviction petitions, is was this raised before? Could it have been raised before? The Bowes issue could have been raised before. There's a full-page document sitting right there in the record. It was served to the defendant so the defendant knew. It was where any appellate lawyer that looked through the common law record would have seen it, so it could have been raised on direct appeal. And we also have to consider what the Supreme Court in Allen has said, which is that even if he had this stun belt on, by the way, I don't know where the 50,000 volts came from. It's not good. Failure to make a Bowes announcement doesn't make a due process violation. That's what our Supreme Court said in Peeble v. Allen. The court concluded that the defendant's failure to object and to carry his burden of persuasion amounted to forfeiture of the error since he could not establish that it prevented him from obtaining a fair trial. Now, in this case, we have the defendant's affidavit. This is what he says, that he was prevented from insisting that his attorney, Bill Lucco, cross-examine the witnesses to properly show their bias against him. That's what's in his affidavit. I ask this court, how could that belt have done that? I also would note that the trial court is allowed to take into consideration what happened at trial. They can go back and read the transcripts if they want to in deciding to deny a post-conviction petition at this point before there's any evidence. They can take what they already know about the case and use it. That's what this trial court did, this trial judge did. He pointed out that he had observed the defendant moving around the courtroom without difficulty during the trial and talking to his lawyer. He's allowed to consider that. Just as he's allowed to consider the testimony that he heard at the trial, just as he's allowed to consider the documents that were filed during the trial, he is allowed to consider what he saw. So how, when you take what the trial court saw and made a record of and what the defendant claimed, which is that he prevented from insisting, not assisting, insisting that his attorney Bill Lucco cross-examine the witness to properly show their bias against it. Now on appeal, the defendant says that wearing the stun belt weighed heavily upon the mind of the defendant in making the decision not to testify. The defendant never said that. That's not in this post-conviction petition. That's not in this affidavit. You can't suddenly decide that... Is it you're saying that the affidavit only pertains to his inability to insist that Lucco do something? The petition itself says that he wanted to ask his attorney a question, but his fear of the electronic stun belt forced him to remain silent. His affidavit says that it prevented him from insisting that his attorney Bill Lucco cross-examine the witness to properly show their bias against him. Neither one of those statements says anything whatsoever about his decision whether to testify. Well, he asked relief to amend on this issue, right? Yes. So maybe this would have been additional things that would have been in the petition had he been allowed to amend it. Again, we go to the fact that the trial court saw the amendment. The trial court saw the amendment and said this... Today, counsel says he added it because of Harris. He read Harris. And so that's why he wants to amend it. I've read Harris, too. Reading Harris and saying that now I've had enough for my Bose count doesn't amend this complaint to make it sufficient. It certainly doesn't say that he was afraid to testify on his own behalf because of it. Harris is simply a further interpretation of Allen and doesn't really... I mean, it's good that it's certainly... I'm getting ready to argue a case right after this one where I have supplemental authority and file supplemental authority. And there's certainly nothing wrong with if you find a new case on point to add it. He did that. The trial court said he considered everything, and it wouldn't change his opinion, and there was no need to amend the petition. Again, I would get back to the point that I really believe the important thing here to consider is whether this can be remanded for just this one issue, and I have no doubt that it can be. If you look at the Supreme Court's analysis of why first-stage petitions can be or cannot be partially remanded and apply it to the second-stage petition, the reasons for not doing it at the first stage don't apply at all at the second stage. And so I think this is why that it should be allowed. First of all, the Rivera court in saying first-stage petitions could not be remanded for just one part. The court noted that the statute, that section, 122-2.1, speaks solely in terms of the petition being frivolous or patently without merit, and the act mandates that if the petition is not dismissed, then the trial court shall order the petition docketed. That reasoning does not apply to second-stage petitions. The statute in this section simply says that within 30 days the state shall answer or move to dismiss. So unlike the first-stage proceedings, there is no language that you have to deal with the petition as a whole. And I would note going back to our analysis of civil law, under the rules of civil procedure, a trial court can strike a portion of a pleading if it is substantially insufficient. And so in a post-conviction petition, a trial court could be able to do the same thing. And furthermore, the second reason that the Rivera court decided for not allowing this in the first stage is that it's a final judgment, and you don't want piecemeal litigation. The statute says it's a final judgment. 22-5 does not contain the final judgment language. If you evaluate the act as a whole, you know that they omitted that for a reason. It would be very easy to have a second-stage hearing to say, I am dismissing these five briefings and having an evidentiary hearing on these two. Do you have your hearing? Just my hypothetical here. The defendant lost his, too, that he had the evidentiary hearing. And then you have one appeal. There's no piecemeal litigation. I mean, piecemeal appeals by allowing the trial court to dismiss some of the counts in the second stage. So that, to me, is the critical issue here. And I think when you get the record, when you find it, one of the things that I find the most important is the affidavits that came to light after the hearing that Tomerlin had perjured himself. Well, let me tell you what defense counsel on the record said he knew about these things before there was any direct appeal, before there was even a sentence. Defense counsel notes that he has taken statements which he offered to the trial court regarding comments within the jail that claimed Tomerlin would make up stories and do anything and say anything to get himself out of jail unless a charge. Defense counsel argued that Tomerlin hoisted a fraud upon this court and gave perjured testimony, which could have been ferreted out before Tomerlin testified. Defense counsel, I mean, he's trying to get new traffic. That's what he's doing. This is the post-trial motion. He's saying, look what I found. I should get a new trial. He tells all of this. He pointed out that a number of letters were submitted which allegedly pretended that the statements were false and perjurious. They're all there. So, again, defense counsel doesn't like forfeiture, but forfeiture is the law. It could have been raised or it was not. Thank you, counsel. Let me start with that. There was nothing in this trial to suggest that the prosecutor would have known that he was putting on perjured testimony. That came with the affidavit of Jeremy Brown. What Mr. Lucco was referring to are statements taken from other inmates, but we don't even have those in the record. Judge Romani calls them an exhibit and says he considers them. We don't know what they were because you can look in the record, whoever the offending judge is, and you will see there's no exhibit of statements. But those comments were made at the post-trial motion. But outside this record entirely is the affidavit of Jeremy Brown. I mean, there was no way the appellate counsel could raise the issue of whether or not the prosecutor put on knowingly false testimony because there was no evidence of it. There was evidence that people could have rebutted and impeached Manny Tomlin, but that doesn't mean the prosecutor knew that he was lying. So that was not a waived issue. None of the procedural bars that this trial court employed or that the state tries to support at this time are correct. Even the res judicata on the insanity defense, because it wasn't res judicata. It came up here and this court said the trial court was right in barring the expert's testimony because the defense counsel didn't certify the insanity defense. That's not res judicata. That is the reason why we're saying the counsel was ineffective. Wouldn't that matter? I mean, couldn't that be interpreted as a matter of strategy? Of course. And I know it was a matter of strategy, but it's enough to get a hearing on whether it was. We get the question. Let me ask you this. What are the material differences in the original post-conviction petition and your amendments there that were not allowed? The amendments that were not allowed, Judge Stewart brought it up. In our original petition, sure, we have an affidavit that he talks about being inhibited to cross-examine. That's his affidavit. But look at the pleadings. We say that he was frustrated in being unable to assist in his defense generally. We wanted to amend to say, yes, look at the record when he was talked to about testifying, and he will supplant that with regard to the fact that his decision not to testify was in large part based on the fact that he was frightened. Now, with regard to the amendment issue, I want to start with the simplest thing. The state has never said they didn't get an opportunity to object because they never saw the amendments because there was never an amended petition filed. The motion for leave to file one was filed. They didn't get a chance to object, but now they've had a chance to at least say, okay, if you allow this amendment, it will prejudice us. But they don't say that. They just say you can't allow leave to amend, even though we're going to go back to the trial court. Why would it prejudice the state if a defendant has the right to properly allege a constitutional violation in the process of verdict in this case? How could the state possibly prejudice? And I would submit that is the issue. I think we've stated, I don't think anything has been procedurally barred. I think there's been a substantial showing on all of the claims. But I want to state this to the court and make this clear. This due process claim is not a booze plug. It is a pure due process claim, and we need to be able to amend it for that. And the document 498, which couldn't be the basis for an appeal, you couldn't tell anything from it, whether the trial judge, the trial counsel even saw it or not. It's not authenticated. It doesn't bear a file stamp. There is nothing in the report of proceedings about it. So it couldn't be the basis for a waiver, as the state argues. But with that document, we have the opportunity to prove a due process violation of a great magnitude here to a man who put his life in harm's way for his right to a death by a trial. Let me ask you a question just to put a fine point on here. With the exception of the issue that the state concedes you're entitled to a third stage hearing on, what you're asking for is a remand for leave to amend for a new second stage hearing. Is that right? I know you'd rather have a third stage hearing on everything, but that's where we're at. I am asking for this to be remanded on all of the claims for a third stage hearing and to be allowed leave to amend to redraft and put in a due process claim based on the fact that the deployment of this device unilaterally by the sheriff of Madison County compromised the dignity of trial proceedings for this man, that he sat through trial nine days being strapped into something every day that he was told could afflict him with 50,000 volts of electricity and was not told what that meant to his human safety. This is a bad claim. It's a serious and not a frivolous claim that we would like to get a hearing. Councils, thank you very much for your arguments this afternoon. I take the matter under advisement.